IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| FL Spring Hill Cortez LLC, | ) | C/A No. 6:22-cv-02229-DCC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| BC Waycross Spring Hill LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This matter is before the Court on Defendant BC Waycross Spring Hill LLC's ("BCW") Motion to Dismiss for Lack of Jurisdiction. ECF No. 9. Plaintiff FL Spring Hill Cortez LLC ("Plaintiff") filed a Response in Opposition, and BCW filed a Reply. ECF Nos. 19, 23. For the reasons set forth below, the Motion is granted.

## BACKGROUND

The following statement of facts is drawn from the allegations of the Complaint. *See* ECF No. 1-1. Plaintiff is a South Carolina limited liability company and wholly owned subsidiary of RealtyLink, LLC ("RealtyLink"), a full-service real estate developer headquartered in Greenville, South Carolina. *Id.* at 2. BCW is a Delaware limited liability company with its principal place of business located in Atlanta, Georgia.[1] *Id.*

Plaintiff and BCW entered into a Tenancy-in-Common Agreement ("the Agreement") on April 5, 2019, through which the parties collectively own and operate a

---

[1] BCW is managed by a single member, BC Waycross Associates, LLP, a Georgia Limited Liability Partnership. ECF No. 1-2 at 3. Within BC Waycross Associates, LLP, there is one general partner: Leslie G. Callahan, III, and three limited partners: Anne C. Callahan, Erin C. Bara, and Sasser Brothers Limited Partnership, all of whom are citizens of the State of Georgia. ECF Nos. 1-2 at 3; 23-1 at 3–4.

commercial retail development located in Spring Hill, Florida ("the Florida Property").  *Id.* at 2, 20.  The Agreement provides a purchase option allowing Plaintiff to acquire BCW's interest in the Florida Property under the conditions set forth in Article XIII.  *Id.* at 6–8, 42–43.  The Agreement also includes a forced sale provision, allowing either party to offer the Florida Property for sale by delivery of notice to the other, if Plaintiff has not previously exercised the purchase option.  *Id.* at 43.

On June 1, 2022, Plaintiff provided notice to BCW, pursuant to the requirements outlined in the Agreement, to exercise the purchase option.  *Id.* at 56–57.   In a letter dated June 2, 2022, BCW disputed Plaintiff's authority to exercise the purchase option and indicated its intent not to transfer its interest in the Florida Property to Plaintiff.  *Id.* at 59–60.  Specifically, BCW stated that it had provided notice to Plaintiff of its right to offer the Florida Property for sale, pursuant to the forced sale provision of the Agreement, on April 29, 2022, prior to Plaintiff's notice to exercise the purchase option.  *Id.* at 59, 61.  Plaintiff disputes the validity of BCW's notice of forced sale, arguing BCW failed to comply with certain notice requirements outlined in the Agreement.  *Id.* at 15.

Thereafter, on June 17, 2022, Plaintiff filed suit against BCW in the Greenville County Court of Common Pleas, alleging breach of contract and specific performance and requesting a declaratory judgment and an award of attorneys' fees.[2]  *Id.* at 12–17.  BCW removed the case to this Court on July 12, 2022.  ECF No. 1.  On August 2, 2022, BCW filed a Motion to Dismiss for Lack of Jurisdiction.  ECF No. 9.  Plaintiff filed a

_____

[2] The Court notes that, on June 21, 2022, BCW filed suit against Plaintiff in the United States District Court for the Middle District of Florida.  *See* ECF No. 36-1 at 6.  The Florida Court has stayed the proceedings in BCW's case pending the resolution of Plaintiff's case in this Court.  *Id.* at 8.

Response in Opposition, and BCW filed a Reply.  ECF Nos. 19, 23.  The Motion is now before the Court.[3]

## **APPLICABLE LAW**

When "a district court rules on a Rule 12(b)(2) motion without conducting an evidentiary hearing or without deferring ruling pending receipt at trial of evidence relevant to the jurisdictional issue, but rather relies on the complaint and affidavits alone, 'the burden on the plaintiff is simply to make a prima facie showing of sufficient jurisdictional basis in order to survive the jurisdictional challenge.'" *In re Celotex Corp.*, 124 F.3d 619, 628 (4th Cir. 1997) (quoting *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989)).  "If the existence of jurisdiction turns on disputed factual questions[,] the court may resolve the challenge on the basis of a separate evidentiary hearing, or may defer ruling pending receipt at trial of evidence relevant to the jurisdictional question."  *Combs*, 886 F.2d at 676.  When a defendant challenges the Court's personal jurisdiction under Rule 12(b)(2) after discovery has been conducted and the relevant evidence has been presented to the Court, the plaintiff has the burden of proving that jurisdiction exists by a preponderance of the evidence.  *In re Celotex Corp.*, 124 F.3d at 628; *Grayson v. Anderson*, 816 F.3d 262, 269 (4th Cir. 2016).  "In deciding whether the plaintiff has made the requisite showing, the court must take all disputed facts and reasonable inferences in favor of the plaintiff."  *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th

---

[3] On August 10 and 12, 2022, BCW also filed a Motion to Strike and a Motion to Transfer.  ECF Nos. 10, 12.  On August 15, 2022, Plaintiff filed a Motion to Remand.  ECF No. 14.  For the reasons stated herein, the Court need not address the remaining motions, and they are denied as moot.

Cir. 2003) (citing *Mylan Labs, Inc. v. Akzo, N.V.*, 2 F.3d 56, 59–60 (4th Cir. 1993)). Additionally, "'[i]n reviewing the record before it, a court may consider pleadings, affidavits, and other evidentiary materials without converting the motion to dismiss to a motion for summary judgment.'" *Magic Toyota, Inc. v. Se. Toyota Distribs., Inc.*, 784 F. Supp. 306 (D.S.C. 1992) (quoting *VDI Techs. v. Price*, 781 F. Supp. 85, 87 (D.N.H. 1991)).

A federal court may exercise personal jurisdiction over a defendant in the manner provided by state law. Fed. R. Civ. P. 4(k)(1)(A). Thus, "for a district court to validly assert personal jurisdiction over a non-resident defendant, two conditions must be satisfied. First, the exercise of jurisdiction must be authorized by the long-arm statute of the forum state, and, second, the exercise of personal jurisdiction must also comport with Fourteenth Amendment due process requirements." *Christian Sci. Bd. of Dirs. of First Church of Christ, Sci. v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001) (citing *Stover v. O'Connell Assocs., Inc.*, 84 F.3d 132, 134 (4th Cir. 1996)).

South Carolina's long-arm statute provides as follows:

> A court may exercise personal jurisdiction over a person who acts directly or by an agent as to a cause of action arising from the person's: (1) transacting any business in this State; (2) contracting to supply services or things in the State; (3) commission of a tortious act in whole or in part in this State; (4) causing tortious injury or death in this State by an act or omission outside this State if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this State; (5) having an interest in, using, or possessing real property in this State; (6) contracting to insure any person, property, or risk located within this State at the time of contracting; (7) entry into a contract to be performed in whole or in part by either party in

4

> this State; or (8) production, manufacture, or distribution of goods with the reasonable expectation that those goods are to be used or consumed in this State and are so used or consumed.

S.C. Code Ann. § 36-2-803(A). "South Carolina's long-arm statute has been interpreted to reach the outer bounds permitted by the Due Process Clause." *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 623 (4th Cir. 1997) (citations omitted). "Consequently, 'the statutory inquiry necessarily merges with the constitutional inquiry, and the two inquiries essentially become one.'" *Id.* (quoting *Stover*, 84 F.3d at 135–36). The central constitutional question the Court must address is whether the defendant has established "minimum contacts with [South Carolina] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).

Viewed through this constitutional lens, personal jurisdiction may arise through specific jurisdiction, which is based on the conduct alleged in the lawsuit, or through general jurisdiction. *CFA Inst. v. Inst. of Chartered Fin. Analysts of India*, 551 F.3d 285, 292 n.15 (4th Cir. 2009). Under general jurisdiction, when a defendant has "continuous and systematic" contacts with the forum state, the defendant "may be sued in [the forum] state for any reason, regardless of where the relevant conduct occurred." *Id.* (citations omitted). When the defendant is a corporation, "general jurisdiction requires affiliations 'so continuous and systematic as to render [the foreign corporation] essentially at home in the forum State,' *i.e.*, comparable to a domestic enterprise in that State." *Daimler AG v. Bauman*, 571 U.S. 117, 159 n.11 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).

**General Jurisdiction**

In recent years, the Supreme Court has significantly narrowed the reaches of general personal jurisdiction. In *Daimler AG v. Bauman*, the Supreme Court clarified that general jurisdiction over corporate defendants will only exist in three circumstances: (1) in the forum where the defendant is incorporated; (2) in the forum where the defendant has its principal place of business; and (3) in a forum where a "corporation's affiliations with the [forum] are so continuous and systematic as to render [it] essentially at home in the forum State." 571 U.S. 117, 138–39 (2014) (internal quotations omitted).

**Specific Jurisdiction**

In contrast, under specific jurisdiction, a defendant may be sued in this Court if the litigation results from alleged injuries that arose out of or related to their contacts with South Carolina and those contacts were sufficient. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984). To determine whether specific jurisdiction exists, courts employ a "minimum contacts" analysis that examines: "(1) the extent to which the defendant purposefully avail[ed] itself of the privilege of conducting activities in the State; (2) whether the plaintiff['s] claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *ALS Scan, Inc. v. Dig. Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002) (internal quotations omitted). Each prong must be satisfied. *See Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 278–79 (4th Cir. 2009). This analysis focuses on the relationship between the defendant, the forum, and the litigation; therefore, the Supreme Court has emphasized "[t]wo related aspects of this necessary relationship." *Walden v. Fiore*, 571 U.S. 277, 284 (2014). "First, the relationship must arise out of contacts that the defendant *himself* creates with the forum State." *Id.* (internal quotation omitted)

6

(quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).  "Second, [the] minimum contacts analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there."  *Id.* (internal quotation omitted) (citing *Int'l Shoe Co.*, 326 U.S. at 319).

## DISCUSSION

In its Motion to Dismiss, BCW contends that the Court lacks general personal jurisdiction.  ECF No. 9 at 5.  It is undisputed that BCW is incorporated under the laws of the State of Delaware and its principal place of business is located in Atlanta, Georgia.  ECF Nos. 1-1 at 2; 1-2 at 2.  As such, the only way this Court can have general personal jurisdiction over BCW is if its contacts with South Carolina are so continuous and systematic as to render it essentially at home in South Carolina.  *See Daimler AG*, 571 U.S. at 139.

Plaintiff alleges that BCW transacted business with Plaintiff in South Carolina, contracted to supply services in this State, entered into the Agreement, which was to be performed in part in this State, and therefore, conducts business in South Carolina.  ECF No. 1-1 at 3.  Plaintiff contends that the parties have a longstanding business relationship, as BCW and its related entities have contracted with Plaintiff on several real estate transactions over the years.  *Id.*  Plaintiff claims that BCW contracted with Plaintiff to invest in the Florida Property, which Plaintiff would develop into a commercial retail development, and that Plaintiff's RealtyLink employees located in Greenville, South Carolina negotiated this transaction with BCW.  *Id.*  Consequently, Plaintiff argues that BCW's breach of the Agreement in failing to comply with Plaintiff's exercise of the purchase option impacted Plaintiff in South Carolina.  *Id.*

7

Having reviewed the arguments and submissions of the parties, the Court finds Plaintiff has failed to show that BCW's contacts with South Carolina are so continuous and systematic as to render it essentially at home in South Carolina. *See Daimler AG*, 571 U.S. at 139. BCW provides the affidavit of Leslie G. Callahan, III, the General Partner of BC Waycross Associates, LLP, the sole member of BCW. ECF No. 23-1. He avers that the sole member of BCW is BC Waycross Associates, LLP, a Georgia Limited Liability Partnership; that he is the general partner of the LLP; and that all partners of the LLP are citizens of the State of Georgia. *Id.* at 3–4. He further provides that BCW has never been required to register and has never registered to do business in South Carolina. *Id.* at 4. Mr. Callahan states that BCW has never owned and does not own real or personal property in South Carolina, nor does it possess any interest in any business located or operating in South Carolina. *Id.* He states that BCW has never and does not now engage in business in South Carolina, that BCW has never met with Plaintiff or anyone else in South Carolina regarding the Florida Property or the Agreement, and that none of BCW's executives, agents, or employees have ever travelled to South Carolina in connection with any matter related to the Florida Property or the Agreement. *Id.* He further avers that BCW negotiated and executed the Agreement at issue in this case exclusively in Atlanta, Georgia. *Id.* Mr. Callahan states that BCW's entire contact with South Carolina is limited to: (a) emails with employees of accounting and legal departments of RealtyLink; and (b) telephone conversations with employees of RealtyLink's construction management department. *Id.* at 5. Based upon the foregoing, the Court finds that it does not have general jurisdiction over BCW. Therefore, the Court turns to the question of specific jurisdiction.

BCW also contends that the Court lacks specific personal jurisdiction because it does not have the requisite minimum contacts with South Carolina and has not purposefully availed itself of the privilege of conducting business in South Carolina. ECF No. 9 at 6–7. Specifically, BCW argues that none of its actions, including the negotiation and execution of the Agreement, occurred in South Carolina, the Florida Property is not located in South Carolina, the Agreement relates exclusively to the Florida Property, and the Agreement is governed by Florida law. *Id.* at 7. BCW claims that Plaintiff solicited its investment in the Florida Property in Atlanta, Georgia and that all matters related to the Agreement in which BCW has been involved, including the negotiation and execution of the Agreement, occurred in Georgia. *Id.* at 7–8.

In response, Plaintiff argues that BCW entered into a long-term business partnership with Plaintiff by becoming co-tenants of the Florida Property under the Agreement. ECF No. 19 at 7. Plaintiff claims that the parties have continued the relationship for over three years and that they have successfully overseen the redevelopment of the Florida Property out of Plaintiff's headquarters in South Carolina. *Id.* Finally, Plaintiff contends that partnering with a South Carolina business for several years to redevelop a property avails that party of the privilege of doing business in that State. *Id.* at 8. Thus, Plaintiff asserts that BCW's long-term partnership with Plaintiff is an intentional act constituting purposeful availment of the forum state and establishes personal jurisdiction. *Id.*

Having reviewed the arguments and submissions of the parties, the Court finds that Plaintiff has failed to demonstrate that specific jurisdiction exists over BCW. Specifically, Plaintiff has neither alleged purposeful conduct in South Carolina sufficient

to hale BCW into court here nor has it supported its allegations with evidence of jurisdictional facts. Although Plaintiff alleges that BCW has maintained a longstanding contractual relationship with Plaintiff, whose headquarters is located in South Carolina, this allegation is insufficient to establish specific personal jurisdiction in this State. *See Burger King*, 471 U.S. at 478 ("If the question is whether an individual's contract with an out-of-state party *alone* can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot."). Moreover, the minimum contacts analysis looks to BCW's contacts with the forum state itself, not its contacts with persons who reside there, and BCW has no discernable contacts with South Carolina based on the facts alleged in this case. *See Walden*, 571 U.S. at 284 (citing *Int'l Shoe Co.*, 326 U.S. at 319) (noting the "minimum contacts analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there"). Therefore, because there is no evidence to indicate that BCW has "created a substantial connection to the forum state by action purposefully directed toward the forum state or otherwise invoking the benefits and protections of the laws of the state," Plaintiff has failed to make a prima facie showing of sufficient jurisdictional basis.[4] *Lesnick v. Hollingsworth & Vose Co.*, 35 F.3d 939, 945–46 (4th Cir. 1994); *see In re Celotex Corp.*, 124 F.3d at 628. Accordingly, Plaintiff has failed to establish that this Court

---

[4] Because the first prong of the three-part test for specific personal jurisdiction has not been satisfied, the Court need not address the remaining factors—whether Plaintiff's claims arise out of BCW's activities directed at South Carolina and whether the exercise of personal jurisdiction would be constitutionally reasonable.

has general or specific personal jurisdiction over BCW, and the claims against it must be dismissed.[5]

<u>**CONLUSION**</u>

For the reasons set forth above, Defendant BCW's Motion to Dismiss for Lack of Jurisdiction [9] is **GRANTED** and Plaintiff's Complaint [1-1] is **DISMISSED** with prejudice. Accordingly, Defendant BCW's Motion to Strike [10], Defendant BCW's Motion to Transfer [12], and Plaintiff's Motion to Remand [14] are **DENIED AS MOOT**.

IT IS SO ORDERED.

s/ Donald C. Coggins, Jr.
United States District Judge

January 19, 2023
Spartanburg, South Carolina

---

[5] In the alternative, Plaintiff requests the opportunity to conduct jurisdictional discovery to establish the full extent of BCW's contacts with South Carolina. Upon review of Plaintiff's arguments regarding the nature of the parties' relationship, the Court finds that conducting jurisdictional discovery in this case would be futile. Accordingly, Plaintiff's request to conduct jurisdictional discovery is denied. *See Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 402 (4th Cir. 2003) ("When a plaintiff offers only speculation or conclusory assertions about contacts with a forum state, a court is within its discretion in denying jurisdictional discovery."); *see also Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 64 (4th Cir. 1993) (noting "district courts 'have broad discretion in [their] resolution of discovery problems that arise in cases pending before [them]'" (quoting *In re Multi-Piece Rim Prods. Liab. Litig.*, 653 F.2d 671, 679 (D.C. Cir. 1981))).